1  Edward D. Fagan, Pro Se
2  590 NE Wavecrest Way
3  Boca Raton, FL 33432
4  Tel. (561) 757-5432
5  Email: faganinternational@gmail.com
6       Applicant Pro Se

FILED IN CLERK'S OFFICE
U.S.D.C. Atlanta

MAY 09 2019

JAMES N. HATTEN, Clerk
By_____ Deputy Clerk

7                    UNITED STATES DISTRICT COURT
8                    NORTHERN DISTRICT OF GEORGIA
9
10          CASE # _____  1 8 1 9 - M I   0 0 7 0
11  In Re:
12       Application of EDWARD D. FAGAN,                    |
13       pursuant to 28 U.S.C. § 1782 for Judicial Assistance  |
14       in obtaining evidence from (i) SUNTRUST BANK and   |
15       MOTONI GLOBAL INVESTMENT CO. INC. and              |
16       (ii) CITIBANK and CTS GLOBAL SUPPLY CHAIN          |
17       SOLUTIONS                                          |
18       for use in a Foreign Tribunal and Proceeding       |
19
20
21              **APPLICATION FOR JUDICIAL ASSISTANCE**
22       **PURSUANT TO 28 U.S.C. § 1782 TO AID IN FOREIGN PROCEEDING**
23
24       EDWARD D. FAGAN (hereinafter "Applicant"), acting as a pro se Applicant, hereby

25  makes the following application for limited judicial assistance pursuant to 28 U.S.C. § 1782 to

26  aid in the several Foreign Proceeding(s) which are currently pending in and under ongoing

27  criminal investigation in the Republic of South Africa (SAPS Sinoville Case # 3471/1/2019) and

28  the FBI Field Office in New Orleans and on the basis of the fact and authority presented below

29  requests an order directing production of documentary evidence that is in the custody, possession

30  and/or control of witnesses (i) SUNTRUST BANK ("SUNTRUST") and MOTONI GLOBAL

31  INVESTMENT ("MOTONI") and (ii) CITIBANK and CTS GLOBAL SUPPLY CHAIN

32  SOLUTIONS ("CTS") each of which can be found in and which do business in this District,

33  each of which is being given notice of this Application, and respectfully shows the Court the

34  following:

---

1          **INTRODUCTION**

2          1.      This Application for Judicial Assistance is to obtain evidence as allowed pursuant

3      to Section 1782(a), and the US Supreme Court in *Intel v. Advanced Micro Devices, Inc.*, 542

4      U.S. 241 (2004) so that the evidence obtained from persons and entities residing and/or found

5      within this judicial district so that evidence " . . . for use in a proceeding in a foreign or

6      international tribunal, including criminal investigations conducted before formal accusation."

7          2.      The evidence sought is for use the South African Police Services - SAPS

8      Sinoville Case # 347/01/2019 investigation and future prosecution in which Applicant is the

9      original complaining witness and which foreign proceeding is underway in the Republic of South

10     Africa by the South African Police Services – Serious Commercial Crimes Unit – and in which

11     the South African Interpol is being brought in due to the international nature of the wrongdoings.

12         3.      The evidence may also be used to assist with other investigations the existence of

13     which Applicant learned after the commencement of the South African Police Service - SAPS

14     Sinoville Case # 347/01/2019 including (i) the FBI Field Office in New Orleans in its

15     investigation that was commenced prior to the South African Police Services – SAPS Sinoville

16     Case # 347/01/2019, and in which Applicant has an interest, and in which Applicant's assistance,

17     information and evidence in Applicant's possession has been and continues to be requested by

18     the FBI Special Agent and Assistant US Attorney leading the investigation and future

19     prosecution and (ii) the Royal Canadian Mounted Police (RCMP) investigation that was also

20     commenced before South African Police Service - SAPS Sinoville Case # 347/01/2019 and

21     which Applicant is informed are pending in British Columbia or Ontario and came as a direct

22     result of an investigation conducted by the Santa Clara County Sheriff's Office into the wire

1    transfer(s) by one of Applicant's partners and predecessors to a Southern California shipping

2    company that was shipping stolen goods to Nigeria, as explained below..

3         4.       The South African foreign proceeding – SAPS Sinoville Case # 347/01/2019 is

4    against the person / entity who / which used, operated and/or controlled one of the domains

5    which was used to send the solicitation materials and fake documents that tricked Applicant, his

6    partners and predecessors into the fraud and which were part of the fraud that led to transfers for

7    which this Application is made.

8         5.       The details of the South African foreign proceeding – SAPS Sinoville Case No.

9    347/01/2019 is described in greater detail below. Attached as **Exhibit 1** are copies of March 1

10   and 27, 2019 emails from South Africa Police Services – Serious Commercial Crimes Unit -

11   Capt. Eric Chiloane - leading the SAPS Sinoville Case # 347/01/2019.  In the March 1, 2019

12   Email, Capt. Chiloane confirms the existence of the complaint, investigation and future

13   prosecutions; and states that the South Africa Police will welcome evidence that can be secured

14   through the US Courts and that evidence will be used in the future prosecutions.  In the March

15   27, 2019 email, Capt. Chiloane confirms that South African Interpol is being brought into the

16   case as it involved an international fraud.  Also included in Exhibit 1 are the Cover Sheets of

17   South African Police Services - SAPS Sinoville Case # 347/01/2019 file.[1]

18        6.       The details of the investigation being conducted by the FBI New Orleans field

19   office is also described in greater detail below. Attached as **Exhibit 2** are copies of several

20   emails from March 2019 from the FBI Special Agent Krista Bradford leading the New Orleans

21   Field Offices investigation of the Nigerian Fraud.

---

[1]     Applicant apologizes for the copy quality; however, Applicant was informed that he was
permitted to take a cell phone photo of the case folder covers but could not copy documents in the file.

---

1    7.    The details of the additional investigation by the Santa Clara County Sheriff's

2    Office which are directly related to this Application are described in greater detail below.

3    Attached as **Exhibit 3** is the email from Santa Clara County Sheriff's Det. Cody Cogliandro,

4    whose information is specifically related to the shipping company witness such as the one in this

5    Application. Det. Cogliandro informed Applicant that certain aspects of the Santa Clara

6    Sheriff's investigation were turned over to the FBI New Orleans Field Office investigation and

7    others were turned over to the Royal Canadian Mounted Police (RCMP) who were supposedly

8    investigating the fraud in which Applicant, his partners and predecessors were involved.

9    8.    The South African foreign proceeding – SAPS Sinoville Case # 347/01/2019 –

10   investigation and future prosecutions, as well as the FBI, Santa Clara County Sheriff's Office

11   and RCMP investigations and future prosecutions relate to one of the most sophisticated and

12   longest running "Nigerian type" internet banking scams.

13   9.    The scam / fraud committed against Applicant, his partners and predecessors,

14   started in or about 2016 and is ongoing. [2]

15   10.   The scam/fraud was a variations of what cyber-crime and the law enforcement

16   experts refer to as the "419 Letter Scam" [3], "Romance Scam" [4] and "Advance Fee Scam" [5] which

---

[2]    Applicant has been a victim of this fraud since early 2019. Applicant acquired and owns 100 % of the rights of others including Russ Daneluk (victim of this fraud starting in late 2016/early 2017) and Mark Meiers (victim of this fraud since 2017), both of whom sent one or more of the transfers described herein. **See Exhibit 4** - copy of the Assignments of Russ Daneluk and Mark Meier.

[3]    https://www.fbi.gov/scams-and-safety/common-fraud-schemes/nigerian-letter-or-419-fraud - Nigerian letter frauds combine the threat of impersonation fraud with a variation of an advance fee scheme in which a letter mailed, or e-mailed, from Nigeria offers the recipient the "opportunity" to share in a percentage of millions of dollars that the author—a self-proclaimed government official—is trying to transfer illegally out of Nigeria.

[4]    https://en.wikipedia.org/wiki/Romance_scam - A romance scam is a confidence trick involving feigning romantic intentions towards a victim, gaining their affection, and then using that goodwill to

1   include persons/entities connections to Nigeria, who have target persons in the United States and

2   Canada and which use private persons, banks, shipping, travel and other companies through

3   which the scammed monies are transferred.  The scam also involves the use of internet domain

4   and email addresses, through which the scammers send solicitations, fake documents and

5   directions as to where the scammed monies are to be transferred.

6        11.   Some of the information and facts upon which this Application is made came

7   from Santa Clara County Det. Cody Cogliandro who informed Applicant during a telephone

8   conversation on April 4, 2019 that his office's investigation of the wire transfers that were sent

9   by one of Applicant's partners and predecessors to a South California shipping company, i.e.

10  CTS, and that the Santa Clara Sheriff's Office believed that Southern California shipping

11  company appears to have unknowingly shipped "stolen goods" to Nigeria and that Applicant's

12  partners and predecessors' wires were unknowingly paying for shipment of those stolen goods;

13  and that Santa Clara Sheriff's Department wanted to "stop more fraud from continuing" **See**

14  **Exhibit 3** – December 1, 2017 Email to Applicant's partner and predecessor Mark Meier.

15       12.   This Application seeks specific/limited information from SUNTRUST and

16  MOTONI related to Applicant's partners and his predecessors three transfers to SUNTRUST

17  payable to CTS (totaling $72,000.00) with the beneficiary as MOTONI GLOBAL specifically (i)

18  26 Jan 2017 - $ 35,000.00 Transfer; (ii) 11 Apr 2017 - $ 17,000.00 Transfer; and (iii) 8 Sept

---

commit fraud. Fraudulent acts may involve access to the victim's money, bank accounts, credit cards,
passports, e-mail accounts, or national identification numbers; or forcing the victims to commit financial
fraud on their behalf. In many instances, a mail-order bride scam will also bait the victim into
committing felonies to establish citizenship for the perpetrator.

[5]   https://www.fbi.gov/scams-and-safety/common-fraud-schemes/advance-fee-schemes - An
advance fee scheme occurs when the victim pays money to someone in anticipation of receiving
something of greater value—such as a loan, contract, investment, or gift—and then receives little or
nothing in return.

1    2017 - $ 20,000.00 Transfer. **See Exhibit 5** – redacted copies of some of these transfers.

2         13.    The Application further seeks specific/limited information from CITIBANK and

3    CTS related to the three transfers to CITIBANK with the beneficiary as CTS (totaling

4    $22,500.00) and specifically (i) 31 Jan 2017 - $ 2,250.00 Transfer (to CITIBANK Account #

5    XXXXXX9646); (ii) 11 Apr 2017 - $ 5,000.00 Transfer (to CITIBANK Account #

6    XXXXXX0221); and (iii) 18 Oct 2017 - $ 15,000.00 Transfer (to CITIBANK Account #

7    XXXXXX0221). **See Exhibit 6** – redacted copies of some of these transfers.

8         14.    The evidence that is in the possession of (i) SUNTRUST and MOTONI and (ii)

9    CITIBANK and CTS will show the persons or entities who were involved with arranging the

10    shipment of goods or other transports to Nigeria which were paid for (albeit unknowingly) by

11    Applicant's partners and predecessors and all of which were the result of documents, invoices

12    and instructions that were sent to (i) SUNTRUST and MOTONI and (ii) CITIBANK and CTS

13    and which were based upon the fraud committed against Applicant, his partners and

14    predecessors. This evidence is relevant to the South African foreign proceeding – SAPS

15    Sinoville Case # 347/01/2019 investigations and future prosecution.

16         15.    Applicant is not seeking to circumvent any relevant evidence gathering laws.

17    Applicant is not on a fishing expedition. Applicant is not looking for persons or entities against

18    whom/which civil claims can be brought. Applicant is looking for information that will assist in

19    the ongoing investigations and future prosecutions in South Africa foreign proceeding – SAPS

20    Sinoville Case # 347/01/2019. The evidence will also assist the FBI New Orleans Field Office

21    investigations. The South African and FBI investigations are both directed at the Nigerian

22    Internet / Banking Fraud to which Applicant, his partners and predecessors fell victims and the

---

1  investigation appear to overlap.

2      16.    The request for the specific information in the Application, i.e. information

3  related to the monies that were transferred to (i) SUNTRUST and MOTONI and (ii) CITIBANK

4  and CTS, meaning monies that were transferred to company accounts, came in part from the

5  statements made to Applicant by Santa Clara County Sheriff's Office Det. Cogliandro in the

6  aforesaid April 4, 2019 conversation who explained that he knew the shipping and other

7  company(ies) had in their possession evidence documents that would show (i) who gave the

8  directions to ship certain goods or pay for transportation costs to Nigeria; (ii) who informed the

9  company(ies) that it would receive a wire transfer from a "third party" (in this case it was

10  Applicant's partners and predecessors) which monies would be to pay for the shipment or

11  transfers to Nigeria; (iii) to whom the company(ies) ultimately sent the goods or other items they

12  were allegedly transporting; and (iv) what if any portion of the transfers that came from

13  Applicant's partners and predecessors were sent to other persons or entities.

14      17.    South African Police Services Capt. Chiloane confirmed that the information and

15  documents requested from entities such as (i) SUNTRUST and MOTONI and (ii) CITIBANK

16  and CTS - which entities must have the documents related to (i) instructions and communications

17  that were given to the banks into which and from which the fraud victim's wire transfers were

18  sent and (ii) the information as to where, if at any, monies may have been transferred onward.

19  This evidence, information and documents will assist the South African Police Services – SAPS

20  Sinoville Case # 347/01/2019 - investigators and prosecutor prove the fraud cases and ensure that

21  all the persons / entities involved in and who / which benefitted from the fraudulent scheme are

22  brought to justice.

1       18.    The request is not overly broad or burdensome and is limited to information

2    related to the transfers referred to above in ¶¶ 12 & 13, specifically (i) three transfers made to

3    SUNTRUST with the beneficiary as MOTONI and (ii) the three transfers to CITIBANK with the

4    beneficiary as CTS and request seeks only (i) information that was presented to (i) SUNTRUST

5    and MOTONI and (ii) CITIBANK and CTS as part of the due diligence requirements to support

6    the wire transfers and (ii) information that was given with instructions to do shipments or

7    transports, where the shipments or transports were to be sent, that payments for the shipments

8    and transports would be made by a third party and to whom certain monies, if any, were to be

9    transferred onwards.

10       19.    South African Police Services Capt. Eric Chiloane confirmed in his March 1st

11    Email that the evidence that should be forthcoming from this Application is welcome and will be

12    helpful in the investigation and future prosecutions in SAPS Sinoville Case # 347/01/2019. **See**

13    **Exhibit 1.**

14                 **<u>FACTS RELATED TO THE APPLICATION</u>**

15       20.    Applicant, his partners and predecessors are recognized by the South African

16    Police Services – SAPS Sinoville Case # 347/01/2019 as victims of a Nigerian fraud.

17       21.    The fraudulent scheme involved requests for monies made through emails sent to

18    and by a woman named "Kari Peters" (hereinafter "Peters") who was allegedly an heir to

19    inheritance assets that were held in Nigeria but which could be transferred to the United States.

20       22.    Applicant, his partners and predecessors were told that (i) the Inheritance Monies

21    and Assets to which Peters was allegedly entitled allegedly came from Peter's father (Grant

22    Peters) and Peters claimed the monies and assets were lawfully earned by her father as a result of

1   his alleged contracting business(es) in Africa; (ii) Peters came to know a Canadian national –

2   Paul Corkum (hereinafter "Paul") - a paraplegic living in Ottawa Canada, who Peters allegedly

3   met from her mother; and (iii) if Peters and Corkum were engaged to be married, Corkum would

4   be assigned the rights to the Inheritance Monies and Assets allegedly due to Peters.

5       23.     Peters and Corkum involvement in this matter began in 2016 and continues to the

6   present.

7       24.     Applicant, his partners and predecessors only became involved in 2017.

8       25.     Prior to Applicant's, his partners' and predecessors' involvement, Peters and

9   Corkum got Corkum's brother (Ken Corkum), his wife Kate O'Neill and their relatives to

10  transfer monies in furtherance of the fraud.

11      26.     The fraud was this:  In order to get the alleged Inheritance Monies and Assets

12  transferred into accounts that would be in their names, Peters and Corkum allegedly had to pay

13  certain monies for fees, services, customs, duties and other charges.

14      27.     Prior to approaching Applicant, his partners and predecessors, Peters, Corkum

15  and Corkum's relatives (Ken Corkum, Kate O'Neil and others) allegedly exhausted all their

16  resources and allegedly did not have the necessary additional monies to complete the transfer.

17      28.     In late December 2016 or early January 2017, Peters, Corkum and Ken Corkum

18  approached Applicant, his partners and predecessors to induce them to the possibility of

19  acquiring the Inheritance Monies and Assets by providing additional assistance and monies.

20      29.     Applicant, his partners and predecessors were offered rights and interests to the

21  Inheritance Monies and Assets in exchange for which Applicant, his partners and predecessors

22  would provide additional monies, resources and assistance to get the Inheritance Monies and

1  Assets transferred into account(s) where they could be legally distributed to Peters, Corkum and

2  Applicant, his partners and predecessors.

3      30.    Using the emails Applicant, his partners and predecessors were provided fake

4  documents in which Peters purportedly transferred her interests in the Inheritance Monies and

5  Assets to Corkum, who in turn transferred his interests to Applicant's partners / predecessors.

6      31.    On their face, the documents presented to Applicant, his partners and

7  predecessors appeared to be legitimate and there appeared to be no reason to doubt that the

8  Inheritance Monies and Assets existed and could be legally transferred.

9      32.    At all times, Applicant, his partners and predecessors believed that the Inheritance

10  Monies and Assets existed, that the rights to the monies were legitimate and that they could

11  lawfully acquire an interest in the monies and assets.

12      33.    At all times, Applicant, his partners and predecessors were committed to the fact

13  that before anyone was entitled to receive and take any of the Inheritance Monies and Assets that

14  all taxes, customs duties, transfer fees and other government and regulatory compliance

15  requirements were met and that when the money was actually transferred, it would be clean and

16  not the subject of any illegal or unlawful activity.

17      34.    Applicant, his partners and predecessors considered this to be a lawful business

18  investment to which they would contribute time, energy and monies in exchange for the return of

19  the Inheritance Monies and Assets.

20      35.    Peters and Corkum gave Applicant, his partners and predecessors documents and

21  information that they claimed were given to them by persons / entities who were allegedly

22  responsible for getting the Inheritance Monies and Assets released.

-------------------------------------------------------------------------------------------------

36.    Unbeknownst to Applicant, his partners and predecessors, the persons / entities who allegedly gave the information to Peters and Corkum were behind, part of and benefitted from the Nigerian fraudulent scheme and that the documents and information give to Applicant, his partners and predecessors was intended to mislead Applicant, his partners and predecessors into believing that the alleged Inheritance Monies and Assets actually existed when they did not.

37.    Further, the persons / entities sought to deceive Applicant, his partners and predecessors, into believing that if they paid the fees as per the instructions transferred through Peters and Corkum that the Inheritance Monies and Assets would actually be released.

38.    Applicant, his partners and predecessors were told that what was needed to ensure the transfer of the inheritance monies was the payment of various fees, invoices, costs or other monies to persons and entities who had accounts at various banks in the United States.

39.    Applicant, his partners and predecessors were presented with various documents all of which were transmitted by email or text messages and in which the domain names, email addresses and documents themselves appeared on their face to be authentic.

40.    The documents and information presented to Applicant, his partners and predecessors, were fakes and were part of a scheme designed and intended to trick Applicant, his partners and predecessors to transfer monies to accounts throughout the United States, which monies were then transferred onward to the persons / entities behind this Nigerian fraud or were used to pay invoices for services related to different parts of the Nigerian Fraud.

41.    As relates to this Application, Applicant, his partners and predecessors were directed to the transfers referred to above in ¶¶ 12 & 13, specifically transfer monies to (i) SUNTRUST with MOTONI as the beneficiary or account holder and (ii) CITIBANK with CTS

1    as the beneficiary or account holder.

2    42.   Using fake, forged and false documents, Applicant, his partners and predecessors

3    were "tricked" into sending the transfers referred to above in ¶¶ 12 & 13, specifically (i) three

4    transfers to SUNTRUST with MOTONI as the beneficiary or account holder and (ii) three

5    transfers to CITIBANK with CTS as the beneficiary or account holder.

6    43.   Applicant, his partners and predecessors were told that the transfers were to

7    secure repatriation of the Inheritance Monies and Assets in which Applicant, his partners and

8    predecessors acquired an interest.

9    44.   Applicant, his partners and predecessors were not told that any of the transfers

10    they were instructed to send were to ship goods or pay for other transportation or travel or other

11    costs to Nigeria or anywhere.

12    45.   This relief requested will help the South African Police Services – SAPS Sinoville

13    Case # 347/01/2019 investigation and future prosecutions, as well as the FBI, the RCMP and

14    other law enforcement agencies they will get involved, (i) prosecute the fraud; (ii) make their

15    cases against the persons / entities involved with the scheme; (iii) identify all the persons/entities

16    involved with the fraud; (iv) shut down the fraud and (v) hold accountable all the persons and

17    entities who are / were behind and /or benefitted from the scheme.

18    46.   Santa Clara Sheriff's County Det. Cody Cogliandro explained to Applicant on

19    April 4, 2019, that (i) shipping like MOTONI and CTS were allegedly and presumably

20    unknowingly transporting "goods" to Nigeria and that Applicant, his partners and predecessors

21    wired were to allegedly to pay the shipping or transportation costs; and (ii) companies like

22    MOTONI and CTS would have information that is relevant to who was giving instructions that

1   monies were to be sent to the shipping company, to whom the shipping company was sending

2   the goods for which the monies were transferred and with whom the shipping company

3   communicated when they were told that third parties – such as Applicant, his partners and

4   predecessors – would pay the shipping cost Invoices. [6]

5       47.     South African Police Services Capt. Eric Chiloane told Applicant that banks such

6   as SUNTRUST and CITIBANK to which monies were wired by Applicant, his partners and

7   predecessors would have important and relevant information about the fraud and that information

8   could be gleaned from knowing where the monies were transferred (if they were transferred

9   onward) out of the original accounts.

10      48.     The identity of some of the persons / entities involved with the scheme have been

11  discovered.  These persons / entities who / which are currently under investigation by South

12  African Police SAPS Sinoville Case # 347/01/2017 and others are under investigation by the FBI

13  New Orleans Field Office.

14      49.     Applicant, his partners and predecessors have no available recourse and no ability

15  on their own to secure the evidence related the transfers referred to above in ¶¶ 12 & 13,

16  specifically (i) the three transfers to SUNTRUST with MOTONI as the beneficiary or account

17  holder and (ii) the three CITIBANK with CTS as the beneficiary or account holder that

18  Applicant's partners and predecessors were tricked into wiring.

19              **WITNESSES AND EVIDENCE IN WITNESSES POSSESSION**

20      50.     Witness SUNTRUST BANK maintains a branch at 7575 GA-85, Riverdale, GA

21  30274, and at 303 Peachtree Street, Atlanta, GA, within this District.

---

[6]      Det. Cogliandro told Applicant that his file and the documentation he received from the shipping
companies were turned over the FBI New Orleans Field Office and is now part of their investigation.

---

51.     Witness CITIBANK maintains a branch at 1512 Highway 74 N Tyrone, Georgia 30290, within this District.

52.     Witness CTS GLOBAL SUPPLY CHAIN SOLUTIONS, maintains an Atlanta Office located at 1137 Senoia Road Suite B, Tyrone, GA 30290, Telephone: 770-907-0736, Fax: 404-209-7007, Email: cts@ctsglobalsolutions.com, within this District.

53.     Witness MOTONI GLOBAL INVESTMENT CO. INC.  is identified as a travel agency and maintains an office and employees (including Chief Financial Officer – Olajide T. Oni) at 127 Highway 138 SE, Riverdale, GA 30274.

54.     Account # XXXXXXXXX8992 is maintained at SUNTRUST BANK and the account holder is MOTONI GLOBAL.

55.     Account # XXXXXX9646 and Account # XXXXXX0221 are maintained at CITIBANK and the account holder is CTS.

56.     Between January to September 2017, Applicant's partners and his predecessors made the transfers referred to above in ¶ 12, specifically the transfers (totaling $72,000.00) to MOTONI GLOBAL specifically (i) 26 Jan 2017 - $ 35,000.00 Transfer; (ii) 11 Apr 2017 - $ 17,000.00 Transfer; and (iii) 8 Sept 2017 - $ 20,000.00 Transfer. **See Exhibit 5** – redacted copies of some of these transfers.

57.     Between January to October 2017, Applicant's partners and his predecessors made the transfers referred to above in ¶ 13, specifically the three transfers (totaling $22,500.00) to CTS specifically (i) 31 Jan 2017 - $ 2,250.00 Transfer (to CITIBANK Account # XXXXXX9646); (ii) 11 Apr 2017 - $ 5,000.00 Transfer (to CITIBANK Account # XXXXXX0221); and (iii) 18 Oct 2017 - $ 15,000.00 Transfer (to CITIBANK Account #

1    XXXXXX0221). **See Exhibit 6** – redacted copies of some of these transfers.

2         58.    This application seeks ONLY information that is relevant to the South African

3    Police Services – SAPS Sinoville Case # 347/01/2019 and states as to each witness that:

4              a.    SUNTRUST and CITIBANK should have information related to the

5    transfers referred to above in ¶¶ 12 & 13, that would show (i) what due diligence and

6    Know Your Client (KYC) information the bank received from its account holder to

7    support the transfers of monies; (ii) what invoices were presented to the bank by the

8    account holder showing the reason the monies were being transferred into its account;

9    and (iii) where monies, if any, were transferred onward out of the original accounts; and

10             b.    CTS and MOTONI should have information related to the transfers

11   referred to above in ¶¶ 12 & 13, including but not limited to (i) instructions and who gave

12   them about what was to be shipped to Nigeria; (ii) instructions and who gave them as to

13   where the shipments were to be sent in Nigeria; (iii) instructions and who gave them as to

14   what to report to US and Nigerian customs about the shipments; and (iv) instructions and

15   who gave them as to how the payment for their shipping costs would be paid by a third

16   party – to wit: Applicant, his partners and predecessors.

17        59.    The evidence to be produced and the testimony that will be elicited is for use in

18   the Nigerian fraud investigations being conducted by South African Police Services – SAPS

19   Sinoville Case # 347/01/2019 – in which Applicant is a party. It may also be used in the FBI

20   Field Office in New Orleans and the RCMP's investigation in which Applicant has an interest.

21        60.    Application is not seeking to circumvent evidence gathering laws or procedures in

22   South Africa as the witness banks and witness account holders cannot be compelled by the South

1   African investigating authorities to produce the evidence sought.  And, in that regard, the South

2   African authorities have confirmed that they welcome the evidence that Applicant is attempting

3   to gather in the US Courts and that evidence will be used in their investigation and future

4   prosecutions.  **See Exhibit 1** - March 1, 2019 Email from Capt. Chiloane.

5         61.    This Application also does not seek to circumvent evidence gathering laws or

6   procedures in the United States or Canada both of which regularly accept evidence gathered

7   pursuant to 28 USC § 1782.

8         62.    This application is the only way to obtain the evidence from the witness banks

9   and witness account holders needed to present to the South African authorities and investigators

10  who are attempting to shut down this internet fraud and scheme and to hold accountable those

11  persons / entities within their jurisdiction for their wrongful acts against innocent persons.

12        63.    Granting of the relief sought presents no hardship or burden to the (i)

13  SUNTRUST with MOTONI as the beneficiary or account holder and (ii) CITIBANK with CTS

14  as the beneficiary or account holder, because the evidence is in their possession in this district

15  and to the extent any of the evidence is electronically stored, it can / should easily be produced

16  from (i) SUNTRUST with MOTONI as the beneficiary or account holder and (ii) CITIBANK

17  with CTS as the beneficiary or account holder, servers, computer stored files and databases in

18  this district.

19        64.    Granting this application is consistent with the principles of 28 U.S.C. § 1782 and

20  Fed R. Civ. P Rule 26. [7]

---

[7]    28 U.S.C. § 1782 provides that testimony shall be taken and documents / things produced in accordance with the Federal Rules of Civil Procedure).  Fed. R. Civ. P. 26(d) provides that a district court may authorize early discovery for the parties' and witnesses' convenience and in the interests of justice. *See, e.g., IO Group, Inc. v. Does 1-65, 2010 WL 4055667, at \*2 (N.D. Cal. 2010); Solarbridge Tech. v.*

1

2

3    **WITNESSES NOT PARTIES TO FOREIGN PROCEEDING / INVESTIGATION**

4

5    65.    Witnesses (i) SUNTRUST and MOTONI and (ii) CITIBANK and CTS are not

6    parties, nor are they in privy, with any other party in South African Police Services – SAPS

7    Sinoville Case # 347/01/2019.

8    **THE APPLICATION IS CONSISTENT WITH SUPREME COURT PRINCIPLES**

9

10    66.    The application is consistent with the principles and standards set forth in *Intel*

11    *Corp. v. Advanced Micro Devices, Inc., 542 U.S. 241, 264 (2004); Consorcio Ecuatoriano de*

12    *Telecommunicaciones S.A. v. JAS Forwarding (USA), Inc., No. 11-12879, 2012 WL 2369166*

13    *(11th Cir. June 25, 2012); see In re Clerici, 481 F.3d 1324, 1331 (11th Cir. 2007); United*

14    *Kingdom v. United States, 238 F.3d 1312, 1319 (11th Cir. 2001); Kulzer v. Esschem. Inc., 390*

15    *Fed. Appx. 88, 91 (3d Cir. 2010);* The Ninth Circuit has held that applications for subpoenas

16    pursuant to § 1782 may be filed *ex parte* because "[t]he witnesses can . . . raise objections and

17    exercise their due process rights by motions to quash the subpoenas." *In re Letters Rogatory*

18    *from Tokyo Dist., Tokyo, Japan, 539 F.2d 1216, 1219 (9th Cir. 1976).*

19    67.    Further, as reflected by the language of § 1782, its purpose is to provide federal

20    court assistance in gathering evidence for use in a foreign tribunal. *See Intel Corp. v. Advanced*

21    *Micro Devices, Inc., 542 U.S. 241, 247 (2004); and Schmitz v. Bernstein Liebhard & Lifshitz,*

22    *LLP, 376 F.3d 79, 84 (2d Cir. 2004)* (§ 1782 has "twin aims," i.e., "providing efficient means of

---

*John Doe, 2010 WL 3419189 (N.D. Cal. 2010)* (applicant should be given opportunity through discovery
to identify unknown persons/entities) *(citing Gillespie v. Civiletti, 629 F.2d 637, 642 (9th Cir. 1980);
Semitool, Inc. v. Tokyo Electron America, Inc., 208 F.R.D. 273, 275-77 (N.D. Cal. 2002)* and *Columbia
Ins. Co. v. Seescandy.com, 185 F.R.D. 573, 578-80 (N.D. Cal. 1999)* (factors to be considered when
establishing good cause to learn the identity of an unknown entity through early discovery).

1   assistance to participants in international litigation in our federal courts and encouraging foreign

2   countries by example to provide similar means of assistance to our courts") (internal quotation

3   marks omitted).

### EVIDENCE SOUGHT IS SPECIFIC & RELEVANT TO SOUTH AFRICAN POLICE SERVICES – SAPS SINOVILLE CASE # 347/01/2019

7   68.   This Petition seeks only specific information, also explained above that is relevant

8   to the South African Police Services – SAPS Sinoville Case # 347/01/2019 investigation and

9   future prosecutions and to show how the transfers referred to above in ¶¶ 12 & 13, specifically

10   (i) the three transfers to SUNTRUST with MOTONI as the beneficiary or account holder and (ii)

11   the three transfers to CITIBANK with CTS as the beneficiary or account holder, were part of the

12   overall fraud that was run in part with the help of the South African domains through / from

13   which false and fake documents were sent to Applicant, his partners and predecessors and

14   specifically:–

15   a.   the evidence from SUNTRUST and CITIBANK will show (i) what due diligence

16   and Know Your Client (KYC) information which had to be given to (i) SUNTRUST with

17   MOTONI as the beneficiary or account holder and (ii) CITIBANK with CTS as the beneficiary

18   or account holder SUNTRUST by the person / entity that was responsible for directing that

19   Applicant's partners and predecessors make the transfers referred to above in ¶¶ 12 & 13,

20   specifically (i) the three transfers to SUNTRUST with MOTONI as the beneficiary or account

21   holder and (ii) the three transfers to CITIBANK with CTS as the beneficiary or account holder,

22   to pay for shipping and/or other costs but which Applicant's partners and predecessors believed

23   were being sent to secure the repatriation of the Inheritance Monies and Assets); (ii) what

24   invoices and other documents were presented to (i) SUNTRUST by MOTONI and (ii)

1    CITIBANK by CTS to show why it was that a third party – to wit: Applicant's partners and

2    predecessors – were paying the shipping and other invoices; (iii) what documents were given to

3    SUNTRUST by MOTONI and CITIBANK by CTS showing the reason why the transfers were

4    made; and (iv) where monies, if any, were transferred onward out of (i) SUNTRUST with

5    MOTONI as the beneficiary or account holder and (ii) CITIBANK with CTS as the beneficiary

6    or account holder; and

7            a.      CTS and MOTONI should have information related their accounts at

8            SUNTRUST and CITIBANK, respectively, to support the transfers referred to above in

9            ¶¶ 12 & 13, were received made to and/or received including but not limited to (i)

10           instructions and who gave them about what was to be shipped or transported to Nigeria;

11           (ii) instructions and who gave them as to where the shipments were to be sent or

12           transported in Nigeria; (iii) instructions and who gave them as to what to report to US and

13           Nigerian customs about the shipments or transports; and (iv) instructions and who gave

14           them as to how the payment for their shipping and/or transportation costs would be paid

15           by a third party – to wit: Applicant, his partners and predecessors.

16           69.     This evidence will assist in South African Police Services – SAPS Sinoville Case

17    # 347/01/2019 investigation and future prosecutions against the person who ran the fake domain

18    in South Africa from which documents and instructions were sent to Applicant, his partners and

19    predecessors, to ensure that the fraud was shut down and with which the South African Police

20    Services – SAPS Case # 347/01/2019 investigators and prosecutors can connect the transfers

21    referred to above in ¶¶ 12 & 13, specifically (i) three transfers to SUNTRUST with MOTONI as

22    the beneficiary or account holder and (ii) the three transfers to CITIBANK with CTS as the

---

1    beneficiary or account holder, for the shipments or transport of goods or other things to Nigeria

2    to the persons and entities who organized, were behind and who benefitted from fraudulent

3    scheme against Applicant, his partners and predecessors were brought to justice.

4         70.      This application seeks ONLY information directly related to how it came to be

5    that the transfers referred to above in ¶¶ 12 & 13, specifically (i) the three transfers were made to

6    SUNTRUST with MOTONI as the beneficiary or account holder and (ii) the three transfers were

7    made to CITIBANK with CTS as the beneficiary or account holder; (ii) how it came to be that

8    the monies which Applicant, his partners and predecessors were told were being sent to

9    SUNTRUST with MOTONI as the beneficiary or account holder and CITIBANK with CTS as

10    the beneficiary or account holder were to secure the repatriation of the Inheritance Monies and

11    Assets, instead came to be used to pay for the costs of shipping goods or other transportation

12    costs to Nigeria; and (iii) where monies, if any, may have been out of the three transfers to

13    SUNTRUST with MOTONI as the beneficiary or account holder and the three transfers to

14    CITIBANK with CTS as the beneficiary or account holder were sent to persons / entities who

15    was part of or benefited from the fraud against Applicant his partners and predecessors.

16         71.      The requested information as limited to the transfers referred to above in ¶¶ 12 &

17    13, specifically (i) three transfers to SUNTRUST with MOTONI as the beneficiary or account

18    holder and (ii) the three transfers to CITIBANK with CTS as the beneficiary or account holder

19    will help in the criminal investigation presently being conducted by the South African Police

20    Services – SAPS Sinoville Case # 347/01/2019. This information will also help the

21    investigations being conducted by the FBI Field Office in New Orleans and the RCMP in

22    Canada.

72.     The evidence to be produced and the testimony that will be elicited is for use in the foreign investigation and future prosecutions related to this Nigerian fraud that are being conducted by and part of the South African Police Services – SAPS Sinoville Case # 347/01/2019 in which Applicant is a party. [8]

## PETITION IS MADE IN COMPLIANCE WITH 28 USC § 1782 REQUIREMENTS, CIRCUIT PRECEDENT & SHOULD BE GRANTED

### The Requirements of Section 1782 and Subpoenas Have Been Met

73.     28 U.S.C. § 1782(a), which provides: *The district court of the district in which a person resides or is found may order him to give his testimony or statement or to produce a document or other thing for use in a proceeding in a foreign or international tribunal, including criminal investigations conducted before formal accusation.  The order may be made pursuant to a letter rogatory issued, or request made, by a foreign or international tribunal or upon the application of any interested person and may direct that testimony or statement be given, or the document or other thing be produced, before a person appointed by the court. By virtue of his appointment, the person appointed has power to administer any necessary oath and take the testimony or statement. The order may prescribe the practice and procedure, which may be in whole or part the practice and procedure of the foreign country or the international tribunal, for taking the testimony or statement or producing the document or other thing. To the extent that the order does not prescribe otherwise, the testimony or statement shall be taken, and the document or other thing produced, in accordance with the Federal Rules of Civil Procedure.*

74.     Since 1948, "Congress [has] substantially broadened the scope of assistance

---

[8]     To the extent that the evidence has not already been provided to the FBI and the RCMP by Santa Clara Sheriff's Det. Cogliandro for use in their investigations and future prosecutions, it will be provided to them by Applicant.

1   federal courts could provide for foreign proceedings," per § 1782. *Intel, 542 U.S. at 247-48.*

2        75.     The use of *ex parte* applications is widespread and, in many cases, unremarked

3   upon (and thus approved of *sub silentio*). *See, e.g., In re Request from UK Pursuant to Treaty*

4   *Between Gov't of U.S. & Gov't of UK on Mut. Assistance in Criminal Matters in the Matter of*

5   *Dolours Price*, 685 F.3d 1, 6 (1st Cir. 2012), *cert. denied*, 133 S. Ct. 1796 (2013); *Brandi-Dohrn*

6   *v. IKB Deutsche Industriebank AG*, 673 F.3d 76, 78 (2d Cir. 2012); *In re Consorcio Ecuatoriano*

7   *de Telecommunicaciones S.A. v. JAS Forwarding (USA), Inc.*, 685 F.3d 987, 992 (11th Cir.

8   2012); *In re Clerici*, 481 F.3d 1324, 1329 (11th Cir. 2007).

9        76.     "The history of § 1782 reveals Congress' wish to strengthen the power of district

10  courts to respond to requests for international assistance." *Lo Ka Chun v. Lo To, 858 F.2d 1564,*

11  *1565 (11th Cir. 1988).*

12       77.     Congress has granted the district courts broad discretion in granting judicial

13  assistance under § 1782. *In re Application of Consorcio Ecuatoriano de Telecommunicaciones*

14  *S.A., 2012 WL 2369166, at *21 (11th Cir. 2012); In re Clerici, 481 F.3d 1324, 1331 (11th Cir.*

15  *2007); United Kingdom v. United States, 238 F.3d 1312, 1319 (11th Cir. 2001).*

16       78.     The district court has authority to grant § 1782 application for judicial assistance

17  if the following statutory requirements are met: (1) request must be made "by a foreign or

18  international tribunal," or by "any interested person"; (2) request must seek evidence, whether it

19  be the "testimony or statement" of a person or the production of "a document or other thing"; (3)

20  evidence must be "for use in a proceeding in a foreign or international tribunal"; and (4)

21  person/entity from whom/which discovery is sought must reside and be found in the district of

22  the district court ruling on the application for assistance. 28 U.S.C. § 1782(a); *In re Clerici, 481*

1  | *F.3d at 1332, and In re Chevron Corp., 2010 U.S. Dist. LEXIS 47034, at \*15.*

2  |      79.    Once the statutory requirements have been satisfied, the district court should

3  | consider the following factors in deciding whether to exercise the discretion granted under §

4  | 1782: (1) whether "the person from whom discovery sought is a participant in the foreign

5  | proceeding," because "the need for § 1782(a) aid generally is not as apparent as it ordinarily is

6  | when evidence is sought from a nonparticipant"; (2) "the nature of the foreign tribunal, the

7  | character of the proceedings underway abroad, and the receptivity of the foreign government or

8  | the court or agency abroad to U.S. federal court judicial assistance"; (3) "whether the § 1782(a)

9  | request conceals an attempt to circumvent foreign proof-gathering restrictions or other policies of

10 | a foreign country or the United States"; and (4) whether the request is otherwise "unduly

11 | intrusive or burdensome." *In re Clerici, 481 F.3d at 1334 (quoting Intel, 542 U.S. at 264-65).*

12 |      80.    The Supreme Court has held that § 1782 does not contain a "foreign-

13 | discoverability requirement" – i.e., there is no requirement that the information sought be

14 | discoverable under the law governing the foreign proceeding. Intel, 542 U.S. at 253. The Court

15 | has further held that there is no requirement that a § 1782 applicant show "United States law

16 | would allow discovery in domestic litigation analogous to the foreign proceeding." Id. at 263.

17 |      81.    Section 1782(a) further "directs judges to provide discovery assistance pursuant to

18 | the Federal Rules of Civil Procedure," *Weber v. Finker, 554 F.3d 1379, 1383 (11th Cir. 2009)*, so

19 | long as the order does not prescribe the practice and procedure of the foreign country or the

20 | international tribunal.

21 |      82.    Section 1782 (a) can also be used to discover the identity of individuals behind

22 | emails, domains and internet activity – which was how Applicant, his partners and predecessors

1  were instructed to make the transfers referred to above in ¶¶ 12 & 13, specifically (i) the three

2  wire transfers to SUNTRUST with MOTONI as the beneficiary or account holder and (ii) the

3  three wire transfers to CITIBANK with CTS as the beneficiary or account holder - so that

4  information can be provided to foreign courts and investigating authorities. *See In re*

5  *Application for Appointment of a Commissioner re Request for Judicial Assistance for the*

6  *Issuance of Subpoena Pursuant to 28 U.S.C. § 1782, No. C 11-80136 RS (MEJ), 2011 WL*

7  *2747302 (N.D. Cal. July 13, 2011).*

8  **Applicant Has Met the § 1782(a) Statutory Requirements**

9      83.    The complaints pending and ongoing investigations by the South African Police

10  Services in SAPS Sinoville Case # 347/01/2019 is a foreign proceeding. *See 28 U.S.C. § 1782(a)*

11  *and In re Letters of Request to Examine Witnesses, 59 F.R.D. 625, 629 (N.D. Cal. 1973)*

12  ("crucial requirement is that the foreign body exercise adjudicative power and have an

13  adjudicative purpose").

14      84.    Applicant is the complainant and a party to the foreign proceeding. *See 28 U.S.C.*

15  *§ 1782(a) and Intel, 542 U.S. at 256* (stating that an interested person under § 1782 "plainly

16  reaches beyond the universe of persons designated 'litigant,'" although there is "[n]o doubt [that]

17  litigants are included among and may be the most common example").

18      85.    Applicant seeks only limited evidence in the form of witness testimony and

19  production of documents relevant to the transfers referred to above in ¶¶ 12 & 13, specifically (i)

20  the three transfers to SUNTRUST with MOTONI as the beneficiary or account holder and (ii)

21  the three transfers to CITIBANK with CTS as the beneficiary or account holder as described

22  above.

---------------------------------------------------------------------------------------------------------

In Re: Application of Edward Fagan against pursuant to 28 U.S.C. § 1782 for Judicial Assistance in obtaining evidence from (i)
Suntrust and Motoni and (ii) Citibank and CTS for use in a Foreign Tribunal and Proceeding - - *Page 24*

86.   As to SUNTRUST and MOTONI, the discovery request is tailored to specific transfers referred to above in ¶ 12, specifically the three transfers to SUNTRUST (totaling $72,000.00) with the beneficiary as MOTONI GLOBAL specifically (i) 26 Jan 2017 - $ 35,000.00 Transfer; (ii) 11 Apr 2017 - $ 17,000.00 Transfer; and (iii) 8 Sept 2017 - $ 20,000.00 Transfer. **See Exhibit 6** – redacted copies of some of these transfers.

87.   As to CITIBANK and CTS, the discovery request is tailored to the transfers referred to above in ¶ 13, specifically transfers to CITIBANK with the beneficiary as CTS (totaling $22,500.00) and specifically (i) 31 Jan 2017 - $ 2,250.00 Transfer (to CITIBANK Account # XXXXXX9646); (ii) 11 Apr 2017 - $ 5,000.00 Transfer (to CITIBANK Account # XXXXXX0221); and (iii) 18 Oct 2017 - $ 15,000.00 Transfer (to CITIBANK Account # XXXXXX0221).  **See Exhibit 7** – redacted copies of some of these transfers.

88.   The discovery request is also tailored to the transfers referred to above in ¶¶ 12 & 13, specifically (i) the three transfers to SUNTRUST with MOTONI as the beneficiary or account holder and (ii) the three transfers to CITIBANK with CTS as the beneficiary or account holder including but not limited to (i) instructions and who gave them about what was to be shipped or transported to Nigeria; (ii) instructions and who gave them as to where the shipments were to be sent to or paid in Nigeria; (iii) instructions and who gave them as to what to report to US and Nigerian customs about the shipments or payments; and (iv) instructions and who gave them as to how the payment for their shipping or other costs would be paid by a third party – to wit: Applicant, his partners and predecessors.

89.   The evidence to be produced and the testimony that will be elicited is for use in the South African foreign proceeding South African Police Services – SAPS Sinoville Case #

1    347/01/2019 in which Applicant is a party.

2        90.    The evidence to be produced will assist the South African Police Services – SAPS

3    Sinoville Case # 347/01/2019 investigators understand how the aspect of the fraud that consisted

4    of payments for "shipping" or transportation or travel related companies, with payments made to

5    US banks, were organized and implemented through electronic transfers, fake documents and

6    invoices, and this evidence will help them show the extent of the wrongdoing by the South

7    African who ran, operated and/or controlled the domain from which the fake documents,

8    statements and invoices were transmitted to Applicant, his partners and predecessors and how the

9    fraud to get Applicant, his partners and predecessors to pay the shipping invoices (all the while

10   believing they were paying monies to ensure the repatriation of Inheritance Monies and Assets)

11   were part and parcel of the entire fraud, so that the South African authorities could take the

12   necessary actions to stop this ongoing fraudulent scheme and prosecute the persons involved and

13   who / which benefited from this Nigerian Fraud and scheme.

14       91.    The discovery and evidence sought is from (i) SUNTRUST and its account holder

15   MOTONI and (ii) CITIBANK and its account holder CTS, each of which are located and can be

16   found in the district of the district court ruling on the application for assistance. *See 28 U.S.C. §*

17   *1782(a).*

18   **Discretionary Factors Favor Granting Applicant's § 1782 Application**

19   **Witnesses are Outside Jurisdictional Reach of South African Authorities**

20       92.    SUNTRUST and its account holder MOTONI, and CITIBANK and its account

21   holder CTS are not the subjects of the criminal investigations pending in South Africa Police

1     Services – SAPS Sinoville Case # 347/01/2019.[9]

2        93.     The Supreme Court held that since "nonparticipants in the foreign proceeding

3     may be outside the foreign tribunal's jurisdictional reach ..., their evidence, available in the

4     United States, may be unobtainable absent § 1782(a) aid." *Intel, 542 U.S. at 264.*

5        94.     A foreign tribunal has jurisdiction over those appearing before it and can itself

6     order them to produce evidence. In contrast, nonparticipants in the foreign proceeding may be

7     outside the foreign tribunal's jurisdictional reach; hence, their evidence, available in the United

8     States, may be unobtainable absent § 1782(a) aid. *Id. at 264.*

9        95.     As such, the relevant evidence, documents and information in (i) SUNTRUST's

10     and its account holder MOTONI's and (ii) CITIBANK's and its account holder CTS' possession,

11     custody and control are not in the possession of the foreign tribunal and would be accessible

12     without judicial assistance in this jurisdiction. *See In re Chevron Corp., 2010 U.S. Dist. LEXIS*

13     *47034, at \*20* (noting that Ecuadorian court and tribunal lacked jurisdiction to compel the

14     individual, who was located in the district and not a party to the foreign proceedings, to produce

15     the material sought) and *In re Microsoft Corp., 428 F. Supp. 2d 188, 194 (S.D.N.Y. 2006)*

16     *(finding section 1782 assistance unnecessary and improper where the discovery requested was*

17     *already in the foreign tribunal's possession).*

18                   **Nature and Receptivity of South African Authorities & Tribunals**

19        96.     Section 1782 (a) specifically provides "*The district court of the district in which a*

20     *person resides or is found may order him to give his testimony or statement or to produce a*

21     *document or other thing for use in a proceeding in a foreign or international tribunal, including*

---

[9]     Applicant is also informed that SUNTRUST and ZHEJIANG are also not the targets of the FBI or the RCMP investigations.

1    *criminal investigations conducted before formal accusation . . . .* "

2       97.    § 1782 also authorizes and encourages judicial assistance even as to foreign

3 proceedings that have not yet commenced or advanced.   *See In re: Clerici at 1333 n. 12 (citing*

4 *Intel, 542 U.S. at 248-49).*

5       98.    § 1782(a) contains no threshold requirement that evidence sought from a federal

6 district court would be discoverable under the law governing the foreign proceeding. See *Intel,*

7 *543 U.S. at 247; see also In re Clerici, 481 F.3d at 1333 n.12.*

8       99.    Applicants need not meet a foreign discovery requirement prior to being entitled

9 to assistance under § 1782. *See In re Application of Winning, 2010 WL 1796579 at *10, n.7.*

10       100.   However, to the extent the Court wishes to enquire about this, the March 1, 2019

11 email from South African Police Services Capt. Chiloane confirms that whatever evidence he is

12 able to secure from procedures in the United States will be welcomed in the investigation and

13 future prosecution of SAPS Sinoville Case # 347/01/2019.  **See Exhibit 1.**

14               **This Application is NOT a Fishing Expedition**

15       101.   Federal Courts must guard against the use of § 1782 Requests to investigate

16 whether litigation is possible before launching a claim as well as attempts to collect evidence for

17 the purpose of "developing" evidence for some future criminal or civil case. *See In re Sargeant,*

18 *278 F. Supp. 3d 814 (SDNY 2917).*

19       102.   This Application is not a fishing expedition.  It is not being used to investigate

20 whether a future claim can be made or to collect evidence for the purpose of developing / using it

21 for some future criminal or civil case. *See In re: Sargeant, supra.*

22       103.   The evidence sought in this Application is for use in the South African Police

1  Services – SAPS Sinoville Case # 347/01/2019 in which Applicant is the complaining witness

2  and which evidence will allow the South African investigators and prosecutors to have the

3  evidence to show the connection between that portion of the fraud run out of South Africa and (i)

4  the transfers referred to above in ¶ 12, specifically the three transfers to SUNTRUST with

5  MOTONI as the beneficiary or account holder and (ii) the transfers referred to above in ¶ 13,

6  specifically the three transfers to CITIBANK with CTS as the beneficiary or account holder for

7  payment for the shipment of stolen goods or other transportation related costs to Nigeria. [10] The

8  evidence may also be used in the ongoing investigation by the FBI New Orleans Field office and

9  the RCMP investigation in which Applicant has an interest.

10      104.    The South African Police Services – SAPS Sinoville Case # 347/01/2019

11  investigation exists and are ongoing.  The FBI and RCMP investigations exist and are ongoing.

12  And, the Santa Clara County Sheriff's Department investigation that made the connection

13  between the broader Nigerian fraud against Applicant, his partners and predecessors to the part

14  of the fraud that tricked Applicant, his predecessors and partners to transfer monies to (i)

15  SUNTRUST with MOTONI as the beneficiary or account holder and (ii) CITIBANK with CTS

16  as the beneficiary or account holder to pay for CTS's shipment of and transportation costs to

17  Nigeria.

18      105.    This § 1782 Application requests evidence that the law enforcement officials with

19  whom Applicant has been dealing have informed him the evidence as identified above must be in

20  the possession of (i) SUNTRUST and its account holder MOTONI and (ii) CITIBANK and its

21  account holder CTS.

---

[10]    As explained above, the evidence may also be used in the ongoing investigation by the FBI New
Orleans Field office and the RCMP investigation in which Applicant has an interest.

---

### Applicant Is Not Attempting to Circumvent
### South African Proof Gathering Restrictions and Policies

106.    Applicant is not attempting to circumvent foreign proof-gathering mechanisms in its efforts to secure this evidence but is attempting to gather evidence that is not otherwise accessible to the foreign investigators and prosecutors and which (i) will help in the investigation and future prosecution of South African Police Services – SAPS Sinoville Case # 347/01/2019; (ii) will help identify the roles that each person/entities (presently known and as yet to be discovered) played in behind the Nigerian fraud that was perpetrated against Applicant, his partners and predecessors.  Applicant does not have to prove receptivity to show they are not attempting to circumvent foreign proof-gathering mechanisms. *See, e.g., In re Chevron, 762 F. Supp. 2d 242, 252 (D. Mass. 2010).*

107.    Applicants' request for judicial assistance in order to obtain the evidence from (i) SUNTRUST and its account holder MOTONI and (ii) CITIBANK and its account holder CTS will help in the existing investigations and future prosecutions in South African Police Services – SAPS Sinoville Case # 347/01/2019 and will help the investigators and prosecutors show how the Nigerian fraud against Applicant, his partners and predecessors was perpetrated, including the Applicant's partners and predecessors payment to a shipping and transportation companies (that unbeknownst to Applicant, his partners and predecessors was shipping goods to Nigeria or paying other transportation related costs) was not used to secure the repatriation of the alleged Inheritance Monies and Assets and the role played by each person/entity involved with and benefitted from the fraud were inter-related and part of the entire fraud

108.    Applicant, his predecessors and partners and Applicant is not attempting to circumvent the foreign investigating authorities in South Africa's discovery methods and

1    restrictions.  *See In re Application of Winning, 2010 WL 1796579 at \*10.*

2                    **Application Not Unduly Burdensome or Intrusive**

3         109.    The requests made by Applicant are narrowly tailored to documents, evidence and

4    information that are directly related to the transfers referred to above in ¶¶ 12 & 13, specifically

5    (i) the three transfers to SUNTRUST with MOTONI as the beneficiary or account holder and (ii)

6    the three transfers to CITIBANK with CTS as the beneficiary or account holder and the

7    documents, evidence and information are / should be in the possession, custody and control of

8    the (i) SUNTRUST and MOTONI and (ii) CITIBANK and CTS.   As such, the request is not

9    overbroad nor burdensome. *See In re Consorcio Ecuatoriano, 2012 WL 2369166, at \*20 n.7 and*

10   *Intel, 542 U.S. at 265.*

11        110.    The evidence requested is "relevant to the foreign proceeding", to wit: the

12   criminal investigation by South African Police Services – SAPS Sinoville Case # 347/01/2019.

13   *See In re Dr. Braga, 789 F. Supp. 2d at 1304; compare In re Consorcio Ecuatoriano, 2012 WL*

14   *2369166 at \*24 (holding that the discovery is plainly relevant to the foreign proceedings where*

15   *they formed the basis for the defenses in those proceedings), Kang v. Noro- Moseley Partners,*

16   *246 Fed. App'x. 662, 664 (11th Cir. 2007) (denial only due to "irrelevance of requested*

17   *discovery to the nature of the foreign proceedings").*

18        111.    SUNTRUST and MOTONI and CITIBANK and CTS are not participants in or

19   subject to the jurisdiction of the South African investigating authorities, it is uncertain that the

20   evidence, documents and information they possess can be accessed without the granting of this

21   request, as such are "outside the foreign tribunal's jurisdictional reach." *See Intel, 542 U.S. at*

22   *244.*

---

112.   The documents in SUNTRUST's and MOTONI's and CITIBANK's and CTS' possession, custody and control are relevant and have evidentiary value to the South African Police Services – SAPS Sinoville Case # 347/01/2017 and providing the requested evidence does not subject SUNTRUST or CTS to undue burden. *See Fed. R. Civ. P. 45(c)(3)(iv), Int'l Ass'n of Machinists and Aerospace Workers v. P&B Transp., 2007 WL 4145974, at *2 (M.D. Fla. 2007); Fadalla v. Life Automotive Products, Inc., 258 F.R.D. 501, 504 (M.D. Fla. 2007) (citing Wiwa v. Royal Dutch Petroleum Co., 392 F.3d 812, 818 (5th Cir. 2004).*

113.   The discovery requests are limited to very specific activity in and through (i) the three transfers to SUNTRUST with MOTONI as its account holder and (ii) the three transfers to CITIBANK with CTS as its account holder and as such they are sufficiently tailored so that they are directly relate to the South African Police Services – SAPS Sinoville Case # 347/01/2019 investigation and future prosecutions and will assist in the future investigation and prosecutions of persons / entities involved with and who/which benefitted from the Nigerian fraud against Applicant, his partners and predecessors. *See In re Consorcio Ecuatoriano, 2012 WL 2369166 at *25 (holding that discovery was appropriately tailored as it "limit[ed] the request to information" within a six year time period relating to one specific contract and the deposition of a person most knowledgeable), with Advanced Micro Devices, Inc. v. Intel Corp., 2004 U.S. Dist. LEXIS 21437 (on remand from the Supreme Court, the district court found the 1782 application to be "unduly intrusive and burdensome [since there was] . . . no attempt to tailor its application to the subject matter of the EC Complaint").*

## Applicant's Requests Satisfies Fed. R. Civ. P. Rules 26 & 45 Requirements

## FRCP Rule 26

1    114.   Discovery under § 1782 is guided by the applicable standards found in the Federal

2    Rules of Civil Procedure. *See 28 U.S.C. § 1782* (providing that, "[t]o the extent that the order

3    does not prescribe otherwise, the testimony or statement shall be taken, and the document or

4    other thing produced, in accordance with the Federal Rules of Civil Procedure).

5    115.   A court may authorize early discovery for the parties' and witnesses' convenience

6    and in the interests of justice. Fed. R. Civ. P. 26(d). Courts in this district generally consider

7    whether a plaintiff has shown "good cause" for the early discovery. *See, e.g., IO Group, Inc. v.*

8    *Does 1-65, 2010 WL 4055667, at *2 (N.D. Cal. 2010); Solarbridge Tech. v. John Doe, 2010 WL*

9    *3419189 (N.D. Cal. 2010); Semitool, Inc. v. Tokyo Electron America, Inc., 208 F.R.D. 273, 275-*

10   *77 (N.D. Cal. 2002).*

11   116.   To the extent that some of the evidence to be provided by SUNTRUST and

12   MOTONI and CITIBANK and CTS identifies a person/ entity whose involvement in the fraud

13   against Applicant, his partners and predecessors is not currently known, Applicant should be

14   given an opportunity through discovery to identify these unknown persons/entities, unless it is

15   clear that discovery would not uncover the identities, or no valid claim could be made against

16   them. *See Solarbridge, 2010 WL 3419189, at *1 and Gillespie v. Civiletti, 629 F.2d 637 (9th Cir.*

17   *1980)).*

18   117.   The evidence for which § 1782 Relief is sought by Applicant is in the possession,

19   custody and control of SUNTRUST and MOTONI and CITIBANK and CTS is limited to

20   evidence, documents and information related to the transfers referred to above in ¶¶ 12 & 13 that

21   will assist in the ongoing investigations and future prosecutions of the persons and entities

22   behind the internet fraud against Applicant, his partners and predecessors and will assist the

---

1    foreign investigating authorities show the interaction between the broader internet fraud being

2    run in part out of South Africa and the portion of the fraud that tricked Applicant, his partners

3    and predecessors to make the transfers referred to above in ¶¶ 12 & 13, specifically (i) the three

4    transfers to SUNTRUST with MOTONI as its account holder and (ii) the three transfers to

5    CITIBANK with CTS as its account holder (which monies were NOT used to help secure the

6    repatriation of the Inheritance Monies and Assets as Applicant, his partners and predecessors

7    were lead to believe but were to pay for the shipment of goods to or the payment of other costs

8    related to Nigeria.).  As such, the request does not violate the requirements of Fed. R. Civ. P.

9    Rule 26.

## FRCP Rule 45

10

11         118.    Under FRCP Rule 45(a)(1)(C) a subpoena may command a nonparty served to

12   produce documents that are in its "possession, custody, or control.".

13         119.    "Control is defined not only as possession, but as the legal right to obtain the

14   documents requested upon demand." *Searock v. Stripling, 736 F.2d 650, 653 (2d Cir.*

15   *1984).*  "Control" may also be found where an entity has "access to" and the "ability to obtain

16   the documents." *Bank of New York v. Meridien BIAO Bank Tanzania Ltd., 171 F.R.D. 135, 144*

17   *(S.D.N.Y. 1997); see also, e.g., In re Ski Train Fire of November 11, 2000 Kaprun Austria, 2006*

18   *WL 1328259, *5 (S.D.N.Y. 2006) (same); Addamax Corp. v. Open Software Found., Inc., 148*

19   *F.R.D. 462, 467 (D. Mass. 1993).*

20         120.    "Access" and "ability to obtain documents" is found where "documents ordinarily

21   flow freely between" persons or entities. *Hunter Douglas, Inc. v. Comfortex Corp., No. CIV. A.*

22   *M8-85, 1999 WL 14007, at *3 (S.D.N.Y. Jan. 11, 1999).*

---

1    121.   The evidence needed by Applicant is or should be in the possession, custody and

2  control of SUNTRUST and MOTONI and CITIBANK and CTS.  To the extent there are any

3  documents that may technically be in the control of another over whom / which SUNTRUST and

4  MOTONI and CITIBANK and CTS have control, those documents are also within the

5  possession, custody and control of SUNTRUST and MOTONI and CITIBANK and CTS.  The

6  evidence in SUNTRUST and MOTONI and CITIBANK and CTS' possession, custody and

7  control is needed to assist in the ongoing criminal investigations and future prosecutions of and

8  to understand the roles played by each persons and entities who / which are part of and which

9  benefitted from the Nigerian fraud against Applicant, his partners and predecessors.  *See In Re*

10  *Imanagement Servs., 2005 U.S. Dist. LEXIS 17025, \*10 (E.D.N.Y. Aug. 16, 2005); and*

11  *Fleischmann v. McDonald's Corp., 466 F. Supp. 2d 1020, 1031 (N.D. Ill. 2006).*

12                                   **CONCLUSION**

13    122.   **WHEREFORE,** in view of the foregoing, Applicant prays (i) for an Order (in the

14  form attached) directing / permitting the issuance of subpoenas duces tecum (in the forms

15  attached) to SUNTRUST and MOTONI and CITIBANK and CTS to appear and testify and

16  produce the limited categories of evidence, information, records and documents and (ii) for such

17  other and further relief as is just and appropriate and consistent with 28 U.S.C. § 1782.

18                                         Respectfully submitted,
19
20  Dated: May  9  , 2019              /s/ Edward D. Fagan
21
22                                     Edward D. Fagan, Pro Se
23                                     590 NE Wavecrest Way
24                                     Boca Raton, FL. 33432
25                                     Tel. (561) 757-5432
26                                     Email: faganinternational@gmail.com
27                                                      Applicant Pro Se

---



M Gmail                                                     Edward Fagan <faganinternational@gmail.com>

## 419 Scam Case Statement

**GP:DPCI CCU - Capt Chiloane** <ChiloaneEric@saps.gov.za>          Fri, Mar 1, 2019 at 4:40 AM
To: "faganinternational@gmail.com" <faganinternational@gmail.com>

To whom it may concern

It would be helpful if you could stay to work with our investigators through until Tuesday May 5th

We want to include our colleagues at the Cyber Crime Unit (419 Scam) and Interpol and perhaps the US

Authorities since this matter involves transfers of US currencies

We will appreciate the evidence that you are trying to secure from your applications to the United States

Courts and witnesses in the United States to help us in our Investigation and future prosecution of the

Individuals/entities who are responsible for the crimes against you your partners

Regards

**Captain CHILOANE E**

**SERIOUS COMMERCIAL CRIME INVESTIGATION : DPCI Gauteng**

**Cell: 071 481 3402**

**Email Internal: GP:DPCI CCU - Capt Chiloane**

**Email External:** ChiloaneEric@saps.org.za



H A W K S

 Gmail

Edward Fagan <faganinternational@gmail.com>

## Sinoville CAS 347/01/2019

**GP:DPCI CCU - Capt Chiloane** <ChiloaneEric@saps.gov.za>
To: Interpol | Central Mail <interpol@saps.gov.za>
Cc: Edward Fagan <faganinternational@gmail.com>

Wed, Mar 27, 2019 at 1:47 AM

Dear Sir/Madam

The subject serves as reference

Mr E.D. Fagan ,the complainant who fell victim to internet fraud where over R181 000 000.00 (one hundred and eighty one million rand) was lost

Deposited money into around the world in countries like USA and China to mention few. The case is highly complicated and requires

Assistance at international Level

Please advise on the above matter

Your assistance on this matter will be highly appreciated

## Captain CHILOANE E

## SERIOUS COMMERCIAL CRIME INVESTIGATION : DPCI Gauteng

## Cell: 071 481 3402

## Email Internal: GP:DPCI CCU - Capt Chiloane

## Email External: ChiloaneEric@saps.org.za



HAWKS

EXHIBIT 2

 Gmail

Edward Fagan <faganinternational@gmail.com>

## Misc Follow Up Regarding Nigerian Fraud

**Bradford, Krista C. (NO) (FBI)** <kcbradford@fbi.gov>
To: Edward Fagan <faganinternational@gmail.com>

Wed, Mar 6, 2019 at 9:17 PM

Mr. Fagan,

We will meet at the FBI office tomorrow: 2901 Leon C Simon Blvd, New Orleans, La. Park outside the gate. I will let the security guards know you are coming.

Please bring with you any documentation and contact information for all other law enforcement agencies involved.

Regards,

Krista

[Quoted text hidden]

 Gmail

Edward Fagan <faganinternational@gmail.com>

## Follow Up

**Bradford, Krista C. (NO) (FBI)** <kcbradford@fbi.gov>            Wed, Mar 13, 2019 at 11:21 AM
To: Edward Fagan <faganinternational@gmail.com>

Good morning Mr. Fagan,

I am following up from our meeting last week.

Can you please send me the contact information for your associates?

Also, I would appreciate the wire instructions and wire details for Johnbull Ejovi and David Gory as soon as you are able to get them together.

Thank you,

Krista Bradford

 Gmail

Edward Fagan <faganinternational@gmail.com>

## Nigerian Fraud

**Bradford, Krista C. (NO) (FBI)** <kcbradford@fbi.gov>
To: Edward Fagan <faganinternational@gmail.com>

Wed, Apr 3, 2019 at 6:10 PM

Hello, Mr. Fagan,

Have you had a chance to get the documents together related to the instructions for the wires?

Thank you,

Krista

[Quoted text hidden]

# EXHIBIT   3

## Mark

| | |
|---|---|
| **From:** | Cogliandro,Cody (DAO) [ccogliandro@rtf.sccgov.org] |
| **Sent:** | Friday, December 01, 2017 9:15 AM |
| **To:** | 22mt54@awink.com |
| **Subject:** | Fraud |

Hi Mark,

Thank you for speaking with me regarding the wire payment you sent to the shipping company in Southern CA that sent stolen property to Nigeria.

Please send me the US wires you sent. It would be beneficial to stop more fraud from continuing.

Below is my information.

Sincerely,



Detective Cody Cogliandro #2167
REACT Task Force Agent/Santa Clara County Sheriff's Office Deputy
70 West Hedding Street, West Wing
San Jose, CA 95110
408-282-2435 (Desk)
408-590-7008 (Cell)

# EXHIBIT 4

## ASSIGNMENT

### SECTION 1 - THE PARTIES

**Party # 1 – R.W. Daneluk - Assignor**

R. W. Daneluk (D/O/B _____ 1937 and located at 10504 100 Avenue, Fort St. John, BC V1J 1Z2 CANADA (hereinafter "Daneluk" or "Party # 1") is the owner of 100% of the interests and rights to recovery and ownership of certain claims for recovery of monies that were paid and sent by international wire transfers between 2016 to 2018 to various persons, entities, governmental institutions and financial institutions and which monies (hereinafter "Monies Paid / Wired") were paid and sent from, to and through certain banks and financial institutions located in Canada, the United States and elsewhere in the world as part of the purchase and recovery and acquisition of various assets including but not limited to estate assets, real property, leases, contract rights, outstanding contract revenue, personal property, unpaid but earned income, pension and retirement plans, monies held in bank accounts, assets deposited into safe deposit boxes and vaults and other real and personal property and assets and which "Monies Paid / Wired" certain third parties in bank accounts including but not to the below listed institutions and other persons / entities who / which assisted with the transfer of monies:

**Bank and Financial Institutions Involved :**

Bank of America, Bank of Montreal, Barclays, BNP Paribas, Canadian Imperial Bank of Commerce, Citibank, Chase (JP Morgan Chase), Compass Bank, Credit Registry Corp (United Bank of Africa), East West Bank, Fidelity Investments, Forte – Equity Bank, Huntington National Bank, Money Gram, MUFG Union Bank, PNC Bank, Royal Bank of Canada, Scotia Bank, Sun Trust, TD Bank, USAA, Western Union, Wells Fargo, Zhejiang Tailong Commercial Bank, The World Bank and other sending intermediary, receiving and transferor/transferee banks and institutions as may be identified in the future.

**Other Persons / Entities or Institutions :**

Internet / Domain Service Providers, Lawyers, Government or Quasi-Government Agencies, Transportation Companies, Insurance Companies and such other persons / entities that were involved with the solicitation, sending and receiving of the "Monies Paid / Wired"

**Party # 2 - Edward D. Fagan - Assignee**

Edward D. Fagan (D/O/B: _____ 1952) residing at 590 NE Wavecrest Way, Boca Raton, FL 33432 and US Passport # _____ (hereinafter "Assignee" or "Party # 2").

### SECTION 2 - ASSIGNOR & ASSIGNEE

2.1     Party # 1 Daneluk hereby assigns to Party # 2 Fagan the absolute right and

Initials: _RWD_ and _EDF_                Page 1

---

authority to take actions indicated below on behalf of 100 % of Daneluk's interests in the recovery of the "Monies Paid / Wired" as described in Section 1.1 above and (i) to file administrative, regulatory, civil and criminal complaints; (ii) to make claims related to recovery of monies paid and transferred; (iii) to make claims to compel identification of the undisclosed parties to whom the paid and transferred monies may have been subsequently transferred by the banks and/or persons identified to date; and (iv) to make claims against the banks and other persons/institution who/which were involved with and or benefitted from the "Monies Paid / Wired".

2.2     Upon the successful conclusion of efforts and/or claims as explained above related to recovery of "Monies Paid / Wired" or when any portion of the "Monies Paid / Wired", plus interest and other damages, are returned, Party # 2 Fagan and Party # 1 Daneluk agree that recovered monies, plus any additional interest and/or other damages, shall be deposited into a Trust or Escrow account of a mutually agreed upon lawyer or accountant in Fort Saint John, British Columbia and the monies shall be retained in such Trust or Escrow account until the parties agree upon division of the recovered monies and payment of any unpaid fees and expenses incurred.

2.3     Upon the successful recovery of "Monies Paid / Wired", plus any additional interest and other damages, the parties further agree that they shall meet, discuss and agree upon an equitable and fair division of any additional monies and assets that may be recovered.

2.4     The assignment shall take effect as of this date and shall last up to and including

_____

2.5     Party # 2 Fagan agrees to use his best efforts and diligence to pursue persons, entities, financial institutions, government institutions and others involved with "Monies Paid / Wired" and (i) locate and identify the entities responsible for and/or involved with the above referenced "Monies Paid / Wired", (ii) compel the return of "Monies Paid / Wired", plus appropriate interest and other damages and (iii) compel compliance of the return of other assets for which the "Monies Paid / Wired" were transferred, wired and paid.

2.6     Party # 1 Daneluk and Party # 2 Fagan shall agree upon a budget and payment of all ongoing fees, expenses and costs associated with the above stated purposes. Any fees, expenses and costs that may be incurred and which have not been agreed to by the Parties shall be borne exclusively by the Party who / which was responsible for incurring the fees, expenses and costs that were not included in the agreed upon budget.

2.7     This assignment is personal to Fagan and may NOT re-assigned to third parties or others without the prior written consent of Party 1.

Initials: _RWD_ and _EDF_                Page 2

## SECTION 3 – CONDITION(S)

**3.1**    Party # 2 Fagan has paid ten dollars (USD) and has provided other good and valuable consideration to Party # 1 Daneluk in order to purchase this Assignment.

**3.2**    Party # 2 represents that he will undertake and pursue civil and criminal claims which are intended to secure the return of the "Monies Paid / Wired", to secure the payment of damages and expenses and to identify and hold responsible all persons, entities, financial institutions and / or government agencies that were involved with and / or benefited from the "Monies Paid / Wired".

**3.3**    Party # 1 Daneluk understands and agrees that (i) Party # 2 Fagan is not and will not offer legal advice to Party # 1 Daneluk during the course of his work during this Assignment, (ii) Party # 1 Daneluk has his own lawyer and / or has had a chance to consult with his own lawyer prior to entering into this Assignment.

## SECTION 4 – WARRANTY

**4.1**    For purposes of this Assignment, Party # 1 Daneluk hereby warranties and confirms that has the absolute right to execute this assignment and that he will provide all reasonable cooperation with the Party # 2 Fagan to assist him in the performance of the obligations contained herein.

**4.2**    Insofar as legally permissible, any warranty as to Party # 2 Fagan's performance, success or results (other than Party # 2 Fagan's using its best efforts) to secure performance of the above contracts or to recover the advance fees paid or any other damages is disclaimed.

## SECTION 5 – OBLIGATION OF COOPERATION

Party # 1 Daneluk agrees to cooperate with Party # 2 Fagan with regard to the preparation of declarations, statements or evidence needed for applications to regulatory, administrative, civil and criminal investigations.

## SECTION 6 – DUTY TO CONSULT & STRATEGIZE

Party # 2 Fagan agrees to consult and strategize with Party # 1 Daneluk the efforts he will take in the performance of his obligations contained herein. Party # 2 Fagan shall also consult and strategize with Party # 2 Daneluk with regard to any responses and/or opposition to Party # 2 Fagan's efforts.

## SECTION 7 – WRITTEN FORM; CHOICE OF LAWS; SEVERABILITY

Initials: _RwD_ and _ DR CAt_         Page 3

---

**7.1**    Amendments and addenda or corrections to this Assignment are not valid unless set forth in writing and notarized.

**7.2**    The Parties agree that this Assignment is governed by the laws of the United States and Canada and that in the event of any dispute related to this Assignment, the Court(s) of the United States and Canada shall both be deemed competent to hear and shall have jurisdiction over any dispute.

## SECTION 8 – DISPUTE RESOLUTION BINDING ARBITRATION

**8.1**    In the event of a dispute between the parties, prior to being able to submit the dispute to a Court, the parties agree that the dispute must first be submitted for binding (and non-appealable) Arbitration in Canada or the United States, before the Canadian Arbitration Association ( https://canadianarbitrationassociation.ca/ ) or the American Arbitration Association – ( https://www.adr.org/ ) and arbitrators shall be chosen from the list of recognized and approved arbitrators from either of those two Associations.

**8.2**    The arbitration shall be conducted in accordance with the Rules of the American Arbitration Society and/or the Canadian Arbitration Society, depending upon the choice of Arbitration Associations.

**8.3**    In the event the dispute is submitted for Arbitration, the Arbitration shall be conducted and concluded within 6 months of the date it is submitted.

## SECTION 9 – MISCELLANEOUS PROVISIONS

**9.1**    Should individual provisions or clauses of this Assignment be or become invalid in whole or in part, the remaining provisions hereof shall continue to apply. The Parties agree to act in good faith in replacing the invalid provision by agreeing upon a valid provision that most closely approximates the spirit and purpose of the invalid provision.

**9.2**    Prior to executing this Assignment, each Party has had an opportunity to consult with his / their own counsel. This Assignment is made with full authority and knowledge of its terms, conditions and presents.

**9.3**    It is agreed that Party # 1 Daneluk shall pay Party # 2 Fagan limited / reduced consulting fees and reimbursement of expenses according to a budget that shall be agreed upon by them. In the event, Party # 2 Daneluk refuses to agree upon a budget or does not timely pay the agreed upon budgeted fees and reimbursements, Party # 2 Fagan shall be return the Assignment and suspend or cease performance of the actions contemplated herein.

---

Initials: _RwD_ and _ DR CAt_         Page 4

**This Assignment is approved by the Parties as follows:**

**Assignor – Party # 1**

Dated: _JAN  8, 2019_

Fort Saint John, British Columbia

R. W. Daneluk

Notarized By:

Dated: _JAN 18 /19_

Fort Saint John, British Columbia

Print Name: _R. W. DANELUK STEVEN_

Address: _16604 100 AVE_

_Fort St John, B.C._

Notary Seal

Tel #: _250-785-0000_

Email: _RWD @ DANELUK.com_

_cc RKC Katenberslev cc_

-----------------------------------------

**Assignee – Party # 2**

Edward D. Fagan accepts this Assignment according to the above terms / conditions.

Dated: _Jan 16, 2019_

Boca Raton, Florida

Edward D. Fagan

Notarized By:

Dated:

Boca Raton, Florida

Print Name: _Edward D. Fagan_

Address: _590 NE Wavecrest Way_

_Boca Raton, FL 33432_

Notary Seal

Tel #: _561-400-0287_

Email: _faganinternational @_

_gmail.com_

Initials: _RWD_ and _EDF_

Page 5

# EXHIBIT   5

**BMO** 😊 **Bank of Montreal** | **Requisition for Wire Transfer** | 11/APR/2017

| Serial Number 078541971 | Posting Date 11/APR/2017 | Amount **USD** | 17,000.00 |

**ORDERING CUSTOMER**

Name     **R.W. DANELUK INC.**

Source of Funds   **ACCOUNT**    '-000

**QUOTED RATE & EXCHANGE**

**11047 CAI SELL USD PAYMENT ORDERS (WIRES)**     17,000.00

**1.357   CAD**    **23,069.00**    **46.14 TE 10.00(**

**BENEFICIARY**

| Name | **MOTONI GLOBAL INVESTMENT COMPANY INCORPORATION** | | |
|---|---|---|---|
| Address | **138 SW** | | |
| City | **RIVERDALE** | | |
| State | **GEORGIA** | ZIP Code | 30274-4007 |
| Country | **UNITED STATES** | | |

**BENEFICIARY BANK**

| Bank Name **SUNTRUST BANK** | | |
|---|---|---|
| Address | **7575** | |
| City | **RIVERDALE** | |
| State | **GEORGIA** | ZIP Code    30274 |
| Country | **UNITED STATES** | Bank ID    **SWIFT SNTRUS3A** |

**CORRESPONDENT BANK**

Bank Name **BMO PREFERRED US DOLLAR CORRESPONDENT**     Code   **1000106**

**DETAILS OF PAYMENT**

Notify by Phone   **NO**           Regular    Number

Credit Account   **YES**   Account     /92          Pay on Application & Identification    **NO**

Remittance Information   **ROUTING NUMBER 061000104 SWIFT CODE SNTR US3A**

## WIRE TRANSFER AGREEMENT

In consideration of the Bank of Montreal (the "Bank") processing and receiving wire transfers ("Transfers") from time to time for our account, we agree as follows:

We acknowledge that the Bank is not responsible for and we agree to indemnify and save the Bank harmless from and against any and all charges, expenses, losses, errors, damages, penalties, costs or inconvenience resulting to us or any other person arising from any delay or failure of performance due to causes beyond the control of the Bank, including, without limitation, the acts or omissions of or the insolvency or bankruptcy of other financial institutions or systems failures respecting the processing and receipt of Transfers. The Bank is not liable to us or any other person for incorrect or improper payment to or from us or any person arising out of the processing of any Transfer, unless caused solely by the negligence or willful misconduct of the Bank.

We acknowledge that the Bank may delay the sending of a Transfer in the event that any restrictions applicable to the Bank in any clearing system used to effect the Transfer, including, without limitation, insufficient credit or other limits delay the Bank from sending the Transfer. We acknowledge that the Bank and other financial institutions involved in processing Transfers may rely solely on any account or identification number (s) provided and will not seek to confirm whether the number (s) specified correspond with the name of the payee or the payee's financial institution provided in the payment order and are not obliged in any other way to verify the information contained in the payment order. The payee may be required to provide identification to the satisfaction of the paying financial institution.

Transfers executed by the Bank are irrevocable. While the Bank shall use its best efforts to request a return of funds upon our instructions, the Bank cannot guarantee a return of funds or a return of funds without charge or fee to us. If the Bank is able to obtain a return of funds, the Bank will credit our account less any applicable charges or fees, at the Bank's quoted rate of exchange (where foreign currency exchange is requested by us) on the date such credit is made. The funding account number information may be provided to the beneficiary's financial institution as part of processing this Transfer.

We agree to pay any Bank charges or fees and to reimburse the Bank for any fees or deductions charged by other financial institutions, including but not limited to withholding or other taxes, interest and penalties that may be paid by the Bank, in connection with any Transfers. We acknowledge that other financial institutions may charge or deduct a fee for processing Transfers (including fees for refund requests and corrections) and that the Bank may receive remuneration from the other financial institutions.

Transfers are subject to cut-off times, time zone differences and local laws and regulations of the destination country, including Canada.

| _K.W. Daneluk_ | _K. Arnott_ | _signature_ |
|---|---|---|
| **Customer Signature** | **Completed by** | **Authorized by** |
| | K. ARNOTT | |

Form 90135                                                Customer Copy

### North Peace Savings Credit Union - Wire Transfer Receipt

| | | | |
|---|---|---|---|
| Date | 8-Sep-2017 | Transfer Amount | 20,000.00 USD |
| Reference Number | 3717902 | | |
| | | USD Equivalent | @ 1.00000000 | 20,000.00 USD |
| | | Charges | 9.50 USD |
| | | Customer Total | 20,009.50 USD |

**Sender**

| | |
|---|---|
| Account Number | ...J287 |
| Name | Mark Meiers |
| Street | 13593 Meiers Rd |
| City | Charlie Lake |
| Province/State | BC |
| Postal/Zip | V0C 1H0 |
| Country | CANADA |

**Receiver**

| | |
|---|---|
| Account Number | ...8992 |
| Name | Motoni Global Investment Company I |
| Street | 127 Highway 138 SE |
| City | Riverdale |
| Province/State | GA |
| Postal/Zip | 30274 |
| Country | UNITED STATES |

**Payment Details**

| | |
|---|---|
| Line 1 | Beneficiary: Motoni Global |
| Line 2 | Investment Company Inc. |
| Line 3 | |
| Line 4 | |

**Additional Information**

| | |
|---|---|
| Line 1 | |
| Line 2 | |
| Line 3 | |
| Line 4 | |
| Line 5 | |
| Line 6 | |

**From FI**

| | |
|---|---|
| Transit | 080916710 |
| Name | NORTH PEACE SAVINGS & CREDIT UNION |
| Address | 10344 - 100TH STREET |
| City | FORT ST JOHN, BC, V1J 3Z1 |
| Country | Canada |

**To FI**

| | |
|---|---|
| Routing Code | 061000104 |
| Name | SunTrust Bank |
| Address | 7575 HWY 85 |
| City | RIVERDALE, GA, 30274 |
| Country | United States |

**Sender Correspondant**

| | |
|---|---|
| Account | |
| Line 1 | |
| Line 2 | |
| Line 3 | |
| Line 4 | |

**Receiver Correspandant**

| | |
|---|---|
| Account | |
| Line 1 | |
| Line 2 | |
| Line 3 | |
| Line 4 | |

**Intermediary**

| | |
|---|---|
| Account | |
| Name | |
| Address 1 | |
| Address 2 | |

**Account With FI**

| | |
|---|---|
| Account | |
| Line 1 | |
| Line 2 | |
| Line 3 | |
| Line 4 | |

Customer Signature

# EXHIBIT   6



**Customer's Copy   *Copie du client***

3958 SIL-2015/05

FORT ST. JOHN BANKING CENTRE
FORT ST JOHN, BC                                    BY CABLE
                                                                          Reference / *Référence*
                                                                          4498025

2,250.00 UNITED STATES DOLLAR  VALUE DATED Jan/31/2017

                                                                          Date
                                                                          Jan/31/2017
                                                                          12:24

**Payment Order *Ordre de paiement***

CURRENCY............: UNITED STATES DOLLAR
FOREIGN AMOUNT......: 2,250.00
EXCHANGE RATE.......: N/A
SERVICE CHARGE RATE: 1.2663
SERVICE CHARGES....: 30.00          USD 23.69
FAX ADMIN FEE......:                USD
FAX CONFIRM FEE....:                USD
CORRESP CHARGES....:                USD
CANADIAN AMOUNT.....: 2,280.00          (BRANCH USE ONLY)
TOTAL FOREIGN AMOUNT:2,273.69
CUSTOMER'S ACCOUNT.:          77030  USD
          COMMENTS:
BY ORDER OF:                          DETAILS OF PAYMENT (EG. INVOICE # ETC):
KENNETH CORKUM
PO BOX 530
CHARLIE LAKE BC CA V0C 1H0


DESTINATION BANK:                     PAYMENT INSTRUCTIONS:
BANK IDENTIFIER: CITIUS33             CREDIT ACCOUNT AND NOTIFY
CITIBANK N.A.

               UNITED STATES

ROUTING CODE:  ABA
ROUTING NUMBER:
021000089
BENEFICIARY:                          CORRESP. CHARGES:
ACCOUNT NUMBER:                       TO BE PAID BY BENEFICIARY
          9646
CTS GLOBAL SUPPLY CHAIN SOLUTIONS     INTERMEDIARY BANK:
133 STONEBRIDGE ROAD                  BANK IDENTIFIER:      PNBPUS3NNYC
CEDARHUST NY US 11572                 WELLS FARGO BANK, N.A.
                                      375 PARK AVENUE
                                      NY 4080
                                      NEW YORK,NY           UNITED STATES


Please arrange the payment described above upon the Terms and Conditions on the reverse of this Payment Order. The undersigned acknowledges having read the Terms and Conditions and agrees to be bound by them. If more than one Customer signs this Payment Order the Customers agree that their liability pursuant to this Payment Order shall be joint and several (solidary in Quebec).
*Veuillez prendre des dispositions pour effectuer le paiement décrit ci-dessus conformément aux modalités figurant au verso du présent ordre de paiement. Le soussigné reconnaît qu'il a pris connaissance de ces modalités et accepte d'être lié par celles-ci. Si plus d'un client signe le présent ordre de paiement, les clients reconnaissent qu'ils seront solidairement responsables conformément au présent ordre de paiement.*

| Jan 31 2017 | Kenneth Corkum | Arnold Corkum | |
| --- | --- | --- | --- |
| Date | Name of Customer(s) *Nom du ou des clients* | Authorized Signature *Signature autorisée* | Authorized Signature *Signature autorisée* |

Receipt is hereby acknowledged by us, as agents of the remitter, of the sum required to arrange the payment described above, subject to the terms and conditions appearing on the reverse hereof.
*Nous accusons par les présentes réception, à titre de mandataires du donneur d'ordre, du montant nécessaire pour effectuer le paiement indiqué ci-dessus, sous réserve des modalités figurant au verso des présentes.*
Canadian Imperial Bank of Commerce *Banque canadienne impériale de commerce.*

Per n.p.                    Per p.p.                    Signatures - Branch Officers *Signature des responsables du centre bancaire*

**BMO** ⊕ **Bank of Montreal**      **Requisition for Wire Transfer**                    11/APR/2017

| Serial Number  078541965 | | Posting Date  11/APR/2017 | Amount  **USD** | **5,000.00** |
|---|---|---|---|---|

**ORDERING CUSTOMER**

Name      **R.W. DANELUK INC.**

Source of Funds   **ACCOUNT          -000**

**QUOTED RATE & EXCHANGE**
**11047 CAI SELL USD PAYMENT ORDERS (WIRES)**      **5,000.00**

**1.3663   CAD      6,831.50     15.00 TE  10.00{**

**BENEFICIARY**

| Name | **CTS GLOBAL SUPPLY CHAIN SOLUTIONS** | | |
|---|---|---|---|
| Address | **5192 SOUTHRIDGE PKWY** | | |
| City | **COLLEGE PARK** | | |
| State | **GEORGIA** | ZIP Code | **30349** |
| Country | **UNITED STATES** | | |

**BENEFICIARY BANK**

| Bank Name | **CITIBANK N.A.** | | |
|---|---|---|---|
| Address | | | |
| City | | | |
| State | | ZIP Code | **11816** |
| Country | **UNITED STATES** | Bank ID | **SWIFT CITIUS33** |

**CORRESPONDENT BANK**

| Bank Name | **BMO PREFERRED US DOLLAR CORRESPONDENT** | Code | **1000106** |
|---|---|---|---|

**DETAILS OF PAYMENT**

| Notify by Phone | **NO** | Regular | Number | | |
|---|---|---|---|---|---|
| Credit Account | **YES**   Account          **0221** | | | Pay on Application & Identification | **NO** |

Remittance Information   **ROUTING NUMBER 021000089 SWIFT CODE CITI**
**US33**

### WIRE TRANSFER AGREEMENT

In consideration of the Bank of Montreal (the "Bank") processing and receiving wire transfers ("Transfers") from time to time for our account, we agree as follows:

We acknowledge that the Bank is not responsible for and we agree to indemnify and save the Bank harmless from and against any and all charges, expenses, losses, errors, damages, penalties, costs or inconvenience resulting to us or any other person arising from any delay or failure ofperformance due to causes beyond the control of the Bank, including, without limitation, the acts or omissions of or the insolvency or bankruptcy of other financial institutions or systems failures respecting the processing and receipt of Transfers. The Bank is not liable to us or any other person for incorrect or improper payment to or from us or any person arising out of the processing of any Transfer, unless caused solely by the negligence or willful misconduct of the Bank.

We acknowledge that the Bank may delay the sending of a Transfer in the event that any restrictions applicable to the Bank in any clearing system used to effect the Transfer, including, without limitation, insufficient credit or other limits delay the Bank from sending the Transfer. We acknowledge that the Bank and other financial institutions involved in processing Transfers may rely solely on any account or identification number (s) provided and will not seek to confirm whether the number (s) specified correspond with the name of the payee or the payee's financial institution provided in the payment order and are not obliged in any other way to verify the information contained in the payment order. The payee may be required to provide identification to the satisfaction of the paying financial institution.

Transfers executed by the Bank are irrevocable. While the Bank shall use its best efforts to request a return of funds upon our instructions, the Bank cannot guarantee a return of funds or a return of funds without charge or fee to us. If the Bank is able to obtain a return of funds, the Bank will credit our account less any applicable charges or fees, at the bank's quoted rate of exchange (where foreign currency exchange is requested by us) on the date such credit is made. The funding account number information may be provided to the beneficiary's financial institution as part of processing this Transfer.

We agree to pay any Bank charges or fees and to reimburse the Bank for any fees or deductions charged by other financial institutions, including but not limited to withholding or other taxes, interest and penalties that may be paid by the Bank, in connection with any Transfers. We acknowledge that other financial institutions may charge or deduct a fee for processing Transfers (including fees for refund requests and corrections) and that the Bank may receive remuneration from the other financial institutions.

Transfers are subject to cut-off times, time zone differences and local laws and regulations of the destination country, including Canada.

| _Customer Signature_ | _Completed by_ **K. ARNOTT** | _Authorized by_ | Customer Copy |
|---|---|---|---|

Form 90135



**CIBC**

**Customer's Copy   *Copie du client***

3958 BIL-2015/05

FORT ST. JOHN BANKING CENTRE
FORT ST JOHN, BC                                  BY CABLE

Reference / *Référence*
4494864

35,000.00 UNITED STATES DOLLAR   VALUE DATED Jan/26/2017

Date
Jan/26/2017
14:54

**Payment Order *Ordre de palement***

```
CURRENCY...........: UNITED STATES DOLLAR
FOREIGN AMOUNT.....: 35,000.00
EXCHANGE RATE......: N/A
SERVICE CHARGE RATE: 1.2745
SERVICE CHARGES....: 50.00          USD 39.23
FAX ADMIN FEE......:               USD
FAX CONFIRM FEE....:               USD
CORRESP CHARGES....: 10.00          USD 7.85
CANADIAN AMOUNT....: 35,060.00        (BRANCH USE ONLY)
TOTAL FOREIGN AMOUNT:35,047.08
CUSTOMER'S ACCOUNT.:        7030  USD
              COMMENTS :
```

BY ORDER OF:                    DETAILS OF PAYMENT (EG. INVOICE # ETC):
KENNETH CORKUM
PO BOX 530
CHARLIE LAKE BC CA V0C 1H0


DESTINATION BANK:               PAYMENT INSTRUCTIONS:
BANK IDENTIFIER: SNTRUS3A       CREDIT ACCOUNT AND NOTIFY
SUNTRUST BANK                   FOR CREDIT BENEFICIARY
303 PEACHTREE STREET, NORTH EAST   MOTONI GLOBAL INVESTMENT COMPANY
ATLANTA,GA            UNITED STATES   INC.

ROUTING CODE:  ABA
ROUTING NUMBER:
061000052
BENEFICIARY:                    CORRESP. CHARGES:
ACCOUNT NUMBER:                 TO BE PAID BY REMITTER
        8992
MOTONI GLOBAL INVESTMENT CO INC    INTERMEDIARY BANK:
908 COBBLESTONE BLVD            BANK IDENTIFIER:        PNBPUS3NNYC
FAYETTEVILLE GA US 30215 6818   WELLS FARGO BANK, N.A.
                               375 PARK AVENUE
                               NY 4080
                               NEW YORK,NY            UNITED STATES

Please arrange the payment described above upon the Terms and Conditions on the reverse of this Payment Order. The undersigned acknowledges having read the Terms and Conditions and agrees to be bound by them; if more than one Customer signs this Payment Order the Customers agree that their liability pursuant to this Payment Order shall be joint and several (soliday in Quebec).
*Veuillez prendre des dispositions pour effectuer le palement décrit ci-dessus conformément aux modalités figurant au verso du présent ordre de palement. Le soussigné reconnaît qu'il a pris connaissance de ces modalités et accepte d'être lié par celles-ci. Si plus d'un client signe le présent ordre de palement, les clients reconnaissent qu'ils seront solidairement responsables conformément au présent ordre de palement.*

Jan 26 2017          KENNETH CORKUM
Date                 Name of Customer(s) *Nom du ou des clients*     Authorized Signature *Signature autorisée*   Authorized Signature *Signatureautorisée*

Receipt is hereby acknowledged by us, as agents of the remitter, of the sum required to arrange the payment described above, subject to the terms and conditions appearing on the reverse hereof.
*Nous accusons par les présentes réception, à titre de mandataires du donneur d'ordre, du montant nécessaire pour effectuer le palement indiqué ci-dessus, sous réserve des modalités figurant au verso des présentes.*
Canadian Imperial Bank of Commerce *Banque canadienne impériale de commerce*

Per p.p.                Per p.p.                    Signatures – Branch Officers *Signature des responsables du centre bancaire*